**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARZEL P. SHEARS,<br><br>                              Petitioner,<br><br>v.<br><br>M.E. SPEARMAN, Warden,<br><br>                              Respondent. | Case No.: 17cv0559-MMA (BLM)<br><br>**REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION**

Petitioner Charzel M. Shears ("Petitioner" or "Shears"), a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in case number DO65200.  (Pet. at 1, ECF No. 1 "Pet.")[1]  The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the lodgments, and all the supporting documents submitted by both parties.  For the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

/ / /

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

1

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1) (West 2006); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> Hallak owned the Moonlite Market. He kept two guns behind the counter. On the morning of April 17, 1996, Hallak was in the market with his employee, Shivers, and a cigar salesman, Shaw. Hallak and Shaw were near the cash register and Shivers was near the cooler. Between 10 a.m. and 10:30 a.m., a Black man entered the store. According to Shivers, he was approximately five feet five inches, or about Shivers's height (five feet eleven inches tall), and of medium build. Shaw saw the man for 20 to 30 seconds; according to Shaw, the man was between five feet six and five feet eight inches tall and of "real slim" build, between 130 and 140 pounds. The man's face was completely covered by a ski mask. The ski mask was dark, either blue or black. The man was wearing dark gloves, either blue or black, with something white, perhaps a stripe. He was wearing something plaid – a jacket, shirt or vest. Dark skin was visible around the eye holes of the ski mask, and on his wrist, between the glove and the shirt.
>
> The man pulled a gun and repeatedly said to Hallak, "Give me the money." The man fired two shots. Shaw ran to the end of an aisle. He heard a third shot. He continued to the back of the market and knelt down. The counters blocked his view of the front of the market. He heard, "Give me the money, give me the money" then heard two more shots. The gunman went behind the counter and shot at Shivers, who had hit the floor when he heard the shots. The crimes were recorded on videotape.
>
> One of the market's regular customers walked in and called to Hallak. Shivers got up, saw Hallak had been shot and called 911. Shaw went to the front of the store and saw Hallak lying on the floor behind the counter. Hallak died at the scene from multiple gunshot wounds. During an autopsy, three bullets were recovered from his body.

See Lodgment No. 6 at 4-5.

///

///

## III. PROCEDURAL BACKGROUND

On February 1, 2013, Petitioner was charged by information with one count of murder (Pen. Code, §187) and two counts of attempted murder (Pen. Code, §§ 664, 187). See Lodgment No. 2, at 4-6. For the murder, the prosecution alleged that it was committed during the special circumstance commission of a robbery (Pen. Code, § 190.2(a)(17); for the attempted murders the prosecution alleged they were "willful, deliberate, and premeditated" (Pen. Code §189); and for all three charges, there was a charged enhancement for personal use of a firearm (Pen. Code, § 12022.5(a)(1)). Id. at 5.

On November 19, 2013, a jury found Shears guilty of all three counts. Id. at 194-97, 422-25. The jury also found true the special circumstance for the murder, and the personal gun use enhancement for all three counts. Id.; Lodgment No. 6 at 3. On December 18, 2013, the trial court sentenced Shears to life in prison without the possibility of parole, and imposed two consecutive sentences of life with the possibility of parole. See Lodgment No. 2, at 352-53, 429-30; Lodgment No. 6 at 3.

Shears appealed his conviction to the California Court of Appeal, arguing (1) a pre-charge delay of more than fifteen years constituted a prejudicial violation of due process because it caused an alibi witness, Gerald Dushone Young (hereinafter "Young"), to be unavailable for trial and (2) the trial court erred in admitting into evidence Shears's admission that he used a gun taken during the Moonlite Market robbery to commit an unrelated crime two days later at a Foodland grocery store in National City. See Lodgment Nos. 3, 4, 5. On May 20, 2015, the Court of Appeal denied Shears's claims and affirmed his conviction in a reasoned opinion. See Lodgment No. 6. On November 30, 2015, Shears filed a petition for review for in the California Supreme Court raising the same two issues. See Lodgment No. 7. The court denied the petition on January 20, 2016 without comment or citation. See Lodgment No. 8.

Shears states that he also filed a petition for writ of habeas corpus in the San Diego Superior Court, alleging "ineffective assistance of counsel, use of false testimony, failure to track witnesses corroborating [Petitioner's] testimony, claim of whereabouts at time of murder." Pet. at 3. On July 27, 2016, the trial court denied the petition. Id. Petitioner did not pursue

further collateral review in the state courts. Id. at 3-4.

On March 20, 2017, Shears filed the instant federal petition for writ of habeas corpus raising the two claims asserted during direct appeal. ECF No. 1. Respondent filed an Answer and Memorandum of Points and Authorities on August 11, 2017. ECF No. 13. Respondent also submitted Lodgments on August 11, 2017. ECF No. 14. On September 15, 2017, Petitioner filed a Traverse. ECF No. 17.

## IV. STANDARD OF REVIEW

Shears's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. See Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." See Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. See Bell v. Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. Id. Additionally, the "unreasonable application" clause requires that the state court

4

decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." See Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. See Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

**V.   DISCUSSION**

Shears raises two claims in his Petition. In Claim One, Petitioner contends the negligent pre-charge delay of fifteen years violated his due process rights because it caused the loss of a material alibi witness. See Pet. at 6, 14-20. In Claim Two, Petitioner argues that his Fifth Amendment due process rights were violated when the trial court admitted evidence that

Petitioner committed an unrelated gun crime two days after the charged crimes. Id. at 7, 21-25. Respondent argues both claims must be denied because Petitioner has failed to establish the state court's decision was contrary to, or an unreasonable application of, clearly established law. See generally, P. & A. in Supp. Answer, ECF No. 13-1.

## A. Petitioner's Claim of Negligent Pre-Charge Delay

In Claim One, Petitioner argues that the negligent pre-charge delay of fifteen years violated his due process rights because it caused the loss of a material alibi witness. Pet. at 6, 21-25. Petitioner contends that the pre-charge delay and resulting prejudice violated his "right to Due Process of Law under the 6th and 14th amendment to the United States Constitution." Id.

Petitioner raised this claim in his petition for review to the California Supreme Court and it was denied without comment or citation. See Lodgment Nos. 7 & 8. This Court therefore looks through to the last reasoned decision to address the claim – that of the California Court of Appeal. See Ylst, 501 U.S. at 805-06. The pre-charge delay was the subject of lengthy pre-trial and post-trial motions in state court. See Lodgment No. 6 at 14; see also Lodgment No. 2 at 95-131, 279-293, 295-313. The trial court ultimately concluded that Petitioner did not suffer actual prejudice as a result of the pre-charge delay. Lodgment No. 1, at 1678-1679. In a comprehensive review of the trial judge's decision, the state appellate court upheld the trial judge's decision reasoning as follows:

> Background
>
> Before trial, Shears filed a motion to dismiss for violation of due process and failure to preserve evidence due to prosecutorial delay. In the motion, he argued the delay had prejudiced his ability to prepare his defense in that material witnesses had died or were missing, the memories of the remaining witnesses had been substantially impaired, valuable evidence had been destroyed or was missing and a crucial investigation was delayed. The People opposed the motion. The court reserved ruling until during or after trial.
>
> During trial, defense counsel asked to have deleted from the transcript of Shears's April 1996 interview Shears's statement that he was at Young's home at the time of the Moonlite Market crime. Defense counsel argued that because of the passage of time, Young could not be located, and this might lead the jury to

6

believe that Shears's alibi was fictitious. The prosecutor argued that Young had said that Shears was at Young's home between 9:30 a.m. and 9:45 a.m. and returned around 11:00 a.m., leaving Shears enough time to commit the crime. Defense counsel's investigator then testified, out of the jury's presence, that she was assigned to the case in November 2012; in December, she was told to locate Young; in September 2013, counsel told her to subpoena Young; and about a week before trial, she learned that the National City police had issued an arrest warrant for Young on August 7. The investigator testified concerning her efforts to find Young. The court found 'there had been some solid effort to locate [Young,] [b]ut during the . . . month preceding the trial, [there had been] little, if any, follow-up.' The court therefore declined to redact the transcript.

After the jury found Shears guilty, defense counsel renewed the motion to dismiss. Defense counsel argued that Young had told Detective Lampert in 1996 that Shears had been with him at the time of the crimes; beginning several months before trial, there was an active arrest warrant for Young; and the defense was unable to locate Young at the time of trial.[6] Defense counsel concluded that but for the delay, 'it is likely . . . Young would have been in a more cooperative spirit, as he had been when he agreed to be interviewed by Detective Lampert in 1996, and would have made himself available to testify as a crucial alibi witness.'

The People opposed the renewed motion to dismiss. At sentencing, the court denied the motion. The court concluded as follows. The defense had not been diligent in searching for Young. Although there was no explanation for some portions of the delay, the delay was not purposeful or the result of a tactical decision. The investigation continued intermittently until Shears was charged. The new information obtained in 2005 (Mrs. Shears's later retracted statement that Shears said he was the planner and shooter) was significant and led to the charges. The jury would have considered testimony by Young that Shears was at Young's home at the time of the crimes in the context of Shears's statements during interrogation that he was at the crime scene immediately before the crimes. Thus, there was no actual prejudice.

[FN 6] Shears made further arguments in the trial court that he does not pursue on appeal.

Discussion

Shears contends the negligent pre-charging delay of more than 15 years constituted a violation of due process; the delay caused alibi witness Young to be unavailable, prejudicing Shears; and the court erred by denying his renewed motion to dismiss.

A "[d]efendant's state and federal constitutional speedy trial rights (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1) are not implicated . . . until at least the defendant has been charged or a charging document has been filed.

[Citation.]" (People v. Nelson (2008) 43 Cal.4th 1242, 1250). "Although pre-charging delay does not implicate speedy trial rights, a defendant is not without recourse if the delay is unjustified and prejudicial. '[T]he right of due process protects a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss or destruction of material physical evidence.' [Citation.] Accordingly, '[d]elay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions. A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay.'" (Ibid.) "[If] the defendant fails to meet his or her burden of showing prejudice, there is no need to determine whether the delay was justified." (People v. Abel (2012) 53 Cal. 4th 891, 909.)

"The state and federal constitutional standards regarding what justifies delay differ. Regarding the federal constitutional standard, we have stated that '[a] claim based upon the federal Constitution also requires a showing that the delay was undertaken to gain a tactical advantage over the defendant.'" (People v. Nelson, supra, 43 Cal.4th at p. 1251.) Although "the exact standard under [the United States] Constitution is not entirely settled[,] [i]t is clear, however, that the law under the California Constitution is at least as favorable for [the] defendant in this regard as the law under the United States Constitution. Accordingly, we . . . apply California law." (Ibid.). "[U]nder California law, negligent as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process." (Id. at p. 1255). Thus, "whether the delay was negligent or purposeful is relevant to the balancing process. Purposeful delay to gain an advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales towards finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation." (Id. at p. 1256.)

"We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them [citation]." (People v. Cowan (2010) 50 Cal. 4th 401, 431). Here, the trial court found that Shears had not met his burden of showing prejudice in light of the conflict between any testimony by Young that Shears was at Young's home[7] at the time of the crimes and Shears's statements that he was at the crime scene immediately before the crimes. This finding is supported by substantial evidence. In April 1996, Shears told the police he was not at the Moonlite Market "or around it" at the time of the robbery; at the time of the robbery, around 9:15 a.m. or 9:30 a.m., he was at Young's home. In the same interview, Shears said he was at the Moonlite Market the morning of the crimes, "right before it happened," from "8:50 to 9:05," and after the crimes.

8

Shears's own statements undermined any alibi testimony Young would have given at trial.

[FN 7:] Young lived in the neighborhood of the Moonlite Market.

Moreover, substantial evidence supports the court's conclusion that the defense was not diligent in attempting to locate Young. After being told to find Young in December 2012, defense counsel's investigator found Young's mother's residence. The investigator telephoned the number listed for that address, but the number had been disconnected. In September 2013, when defense counsel told the investigator to subpoena Young, the investigator went to Young's mother's home and spoke with his mother, who said Young "comes around quite often." The investigator left her business card. When the investigator returned one week later, Young's mother said she had not given him the card. The investigator left another card and did not return to the house or conduct any surveillance. The investigator unsuccessfully checked into two other possible addresses for Young and unsuccessfully contacted two of Young's associates after obtaining their names from Young's mother. The investigator knew of the August 7, 2013, arrest warrant for Young, last checked to see whether he was in custody in early October, and never checked to see whether he was on probation or parole. Thus, factors independent of any delay by the prosecutor, including a lack of diligence by the defense investigator and Young's fugitive state, led to Young's unavailability.

Shears quotes People v. Mirenda (2009) 174 Cal. App. 4th 1313, in which this court stated: "[A]lthough a federal speedy trial case, the reasoning in [Doggett v. United States (1992) 505 U.S. 647 [], is instructive on the issue of showing prejudice for analyzing either speedy trial or due process violations as the constitutional guarantees 'converge in protecting the same interest of the accused' for a fair adjudication. [Citation.] The court in Doggett noted that 'impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." [Citation.] And although time can tilt the case against either side, [citations], one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment [speedy trial] claim . . . , it is part of the mix of relevant facts, and its importance increases with the length of the delay. (Doggett, supra, at pp. 655-656.)" (People v. Mirenda, supra, at p. 1329 [26 year delay between filing of criminal charges and beginning of prosecution].) Shears concludes that the sheer length of a delay increases prejudice; thus, the lengthy delay here suggests that Young's unavailability should be attributed to the prosecution. This proposition does not take into account the fact that Shears's own statements decreased Young's value as an alibi witness or the lack of diligence by the defense investigator.

The court did not abuse its discretion by denying the motion to dismiss.

See Lodgment No. 6 at 15-21.

**1. Federal Law**

Initially, the Court notes that the state court correctly determined that the Sixth Amendment does not govern Petitioner's claim of negligent pre-accusation delay because the speedy trial provision contained in the Sixth Amendment is not implicated until formal charges are filed or a defendant suffers an actual restraint on his liberty. See United States v. Marion, 404 U.S. 307, 320-21 (1971). Rather, the state court correctly analyzed Petitioner's pre-accusation delay claim under the Due Process clause.

In Marion, the Supreme Court held that a defendant may assert a constitutional violation for pre-indictment delay under the Due Process Clause. Id. However, the Court cautioned that the "primary guarantee against bringing overly stale criminal charges" is the applicable statute of limitation. Id. at 322. The Court reversed the decision based on the Sixth Amendment but opined that the Appellees had not established a due process violation because "[n]o actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them." Id. at 325.

Several years later, the Court revisited the issue to address whether the fact that a defendant suffered prejudice as the result of a pre-indictment delay results in a due process violation. United States v. Lovasco, 431 U.S. 783, 789 (1977). The Court confirmed that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Id. The Court rejected the notion that a prosecutor must file charges as soon as there is probable cause to believe a person committed a crime or at any other specific point in time and noted that it is appropriate for a prosecutor to wait to file charges until there is evidence to prove the suspect's guilt beyond a reasonable doubt. Id. at 790-91. The Court stated that the reason for the prosecutor's delay in filing charges is important, highlighting that "investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused." Id. (internal citation and quotation omitted). As a result,

the Court held that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Id. at 796. While the Lovasco Court upheld the lower court ruling finding no due process violation based on the investigative delay, the Court opined that "so few defendants have established that they were prejudiced by delay that neither this Court nor any lower court has had a sustained opportunity to consider the constitutional significance of various reasons for delay. We therefore leave to the lower courts, in the first instance, the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases." Id. at 796-797.

The Ninth Circuit recently confirmed that Lovasco provides the clearly established federal law on this issue. Shammam v. Paramo, 664 F. App'x 629, 630 (9th Cir. 2016). In a case involving a direct appeal, the Ninth Circuit stated that a defendant subject to a lengthy pre-indictment delay must first show "actual, non-speculative prejudice from the delay" and noted that showing actual prejudice is a "heavy burden that is rarely met." United States v. Corona-Verbera, 509 F.3d 1105, 1112 (9th Cir. 2007) (internal citation and quotation omitted). "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice. Consequently, [a defendant] must show both that lost testimony, witnesses, or evidence meaningfully has impaired his ability to defend himself, and [t]he proof must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to [his] case." Id. If the defendant shows actual prejudice, he must then show this prejudice outweighs the reasons for the delay and that the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." Id. (internal citation and quotation omitted).

**2. Analysis**

Petitioner argues that he suffered prejudice due to the "loss of a material witness due to [a] lapse of time" and because the trial court would not redact Petitioner's interrogation statement. Pet. at 6, 16-17. Specifically, Petitioner contends:

> [D]uring the interrogation of April 22, 1996, Mr. Shears made the claim that he was at the house of Shone Young during the robbery and that he heard news of the robbery while there. At trial, defense counsel had requested that this be redacted from the statement. Although Dushone Young was interviewed in 1996 by Sergeant Lampert and confirmed this alibi, the defense had not been able to locate Young and without this corroboration, it might appear that Shears was lying. The prosecutor, supported by the trial judge, would not agree to the redaction absent a finding of due diligence in the attempt to locate Young. . . .
>
> During trial, the court found that [the defense's] efforts were insufficient within the last month before trial to warrant the redaction of the alibi from defendant's statement as requested by defense counsel…
>
> The California Court of Appeal failed to apply the constitution[al] test that determines whether the petitioner was denied due process of law under the Fifth and Fourteenth Amendments of the United States Constitution or the California Constitution, Article I, section 7, or both; where there was a negligent delay between the April 17, 1996 date the murder was committed and the August 24, 2012 date of arrest, 16 years later. The negligent delay and the actual prejudice to the Petitioner thereof was improperly weighed against insufficient justification…
>
> There was no justification for this negligent pre-charge delay where the prosecutor used the same 1996 evidence to convict him in 2013. The negligent delay caused petitioner's alibi witness to evade being located by the defense investigator as alleged in his pre-trial motion to dismiss the case on due process grounds based on a claim of prejudice stemming from unavailable material witnesses and faded witness memories.

Id. at 6, 8-9; see also Traverse at 6-8.

The Court of Appeal found that Shears had not met his burden of showing actual prejudice in light of the conflict between the statement by Young that Shears was with Young at the time of the crimes and Shears's statements that he was at the crime scene immediately before the crimes. Lodgment No. 6 at 18-19. The court explained: "[i]n April 1996, Shears told the police he was not at the Moonlite Market 'or around it' at the time of the robbery; at the time of the robbery, around 9:15 a.m. or 9:30 a.m., he was at Young's home. In the same interview, Petitioner said he was at the Moonlite Market the morning of the crimes, 'right before it happened,' from '8:50 to 9:05,' and after the crimes." Lodgment No. 6 at 18. The Court of Appeal also found that the defense was not diligent in attempting to locate Young, and that factors independent of any delay by the prosecutor led to Young's unavailability. Id. at 20. As a result,

the Court of Appeal found that Shears did not establish actual prejudice. Id. at 18-21. A review of the trial court record supports this argument. See, e.g., Lodgment No. 2 at 95-131 (parties' briefing on the motion to dismiss); Lodgment No. 1 (transcript of trial court hearing during which court reserved ruling on pre-trial motion until after it had a chance to hear trial evidence); Lodgment No. 2 at 279-93 (renewed motion to dismiss); Lodgment No. 2 at 295-313 (state's opposition to the renewed motion to dismiss); Lodgment No. 1 (transcript of trial court's decision to deny renewed motion to dismiss).

This Court finds that the state court's decision was not an unreasonable factual determination. While Young's statement that Petitioner was at Young's home between 9:30 and 9:45 a.m. (returning again at 11 a.m.) could provide an alibi to Petitioner, the strength of that alibi was dramatically undercut by Petitioner's own statements that (1) he was at the Moonlite Market right before the crimes occurred, from approximately 8:50 to 9:05 a.m. and (2) he was not at the Moonlite Market at the time of the robbery. Based upon these conflicting statements, as well as the other trial evidence, Petitioner's claim is merely an assertion that Young's testimony may have been useful and that its absence may have resulted in prejudice and does not establish the requisite actual prejudice. See, e.g., United States v. Horowitz, 756 F.2d 1400, 1405 (9th Cir. 1985) ("Mere assertions that the testimony of missing witness[es] may have been useful . . . is not 'proof of actual prejudice' required by [the Supreme Court]."); see also Corona-Verbera, 509 F.3d at 1113 ("Allegations of prejudice 'must be supported by non-speculative proof."). In addition, there is substantial evidence supporting the appellate court's conclusion that circumstances other than the delay in filing charges rendered Young unavailable to testify, including the facts that the defense investigator did not diligently attempt to locate Young so he could testify at trial and Young was a fugitive due to a pending arrest warrant.

Petitioner also argues that he suffered prejudice as a result of the sheer "length of the delay," relying primarily on a speedy trial case. Pet. at 19. However, Doggett v. United States, 505 U.S. 647 (1992) does not support Petitioner's argument. The court in Doggett specifically noted that "the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution," which is not triggered until the defendant is

arrested, indicted or otherwise officially accused. 505 U.S. at 655; see also United States v. MacDonald, 456 U.S. 1, 7 (1982) ("Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statues of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending."). While the Court discussed the presumption of prejudice applicable in Sixth Amendment speedy trial cases, it did not extend that presumption to due process claims such as Petitioner's involving pre-charge delay. Doggett, 505 U.S. at 655-66. Accordingly, the California Court of Appeal's finding that Petitioner failed to meet his burden of showing prejudice cannot be said to be "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

Even if Petitioner had established the requisite prejudice, clearly established federal law requires that the prejudice outweighs the reasons for the delay and that the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." Corona-Verbera, 509 F.3d at 1112. Here, as the record reflects and Petitioner admits, the delay was investigative (or negligent as stated by Petitioner) and there is no evidence indicating the delay was the result of purposeful or tactical decisions. The government's decision to delay charges in this case comports with Lovasco's statement that it is appropriate for a prosecutor to wait to seek an "indictment until he is completely satisfied that he … will be able promptly to establish guilt beyond a reasonable doubt." 431 U.S. at 795. Also, under California law, there is no statute of limitations for murder [see People v. Wilson, 60 Cal. 2d 139, 170 (1963)], which is the "primary guarantee [] against bringing overly stale criminal charges." Id. at 783. Given the undisputed evidence of investigative delay, the lack of evidence of purposeful or tactical delay, and the minimal, if any, evidence of prejudice, Petitioner has not established a violation of the Due Process Clause. See Shammam, 664 F. App'x at 632 (upholding denial of a habeas petition claiming a due process violation resulting from a 14 year delay between murder and indictment where the delay was the result of an open investigation and the delay caused "some prejudice" consisting of faded memories).

In sum, Petitioner has not shown that the California courts' findings of fact were

14

17cv559-MMA (BLM)

unreasonable or that the factual and legal conclusions that Petitioner did not suffer prejudice were contrary to, or an unreasonable application of, controlling federal authority. See 28 U.S.C. § 2254(d)(1). Accordingly, the Court **RECOMMENDS** Petitioner's Claim One be **DENIED.**

### B.  Petitioner's Claim of Evidentiary Error

In Claim Two, Shears argues that his "conviction resulted from an error of Constitutional dimension which was not shown to be harmless beyond a reasonable doubt by allowing evidence of Petitioner's Admission to committing an unrelated gun crime." Pet. at 7 (citing Chapman v. California, 386 U.S. 18 (1967)). Specifically, Shears contends that his federal constitutional right to due process was violated by the introduction of evidence that he used the gun taken from Hallak to commit an unrelated crime two days later. Pet. at 21-25. Shears raised this issue in his petition for review to the California Supreme Court, which was denied without comment or citation. See Lodgment Nos. 7 & 8. As such, this Court looks through to the opinion of the California Court of Appeal, the last reasoned state court decision to address this issue. See Ylst, 501 U.S. at 805-06. The appellate court found no violation of Shears's due process rights in admitting the challenged evidence. In a comprehensive review of the trial judge's decision, the state appellate court upheld the trial judge's decision reasoning as follows:

Background

Before trial, Shears filed a motion in limine to exclude evidence of his prior crimes, arrests, prison commitment and parole violations. His prior crimes included a robbery he committed on April 19, 1996, at the Foodland grocery store in National City, two days after the crimes at issue, and to which he pled guilty in August. In the Foodland robbery, Shears personally used a gun stolen from Hallak on April 17. Shears's criminal history was a subject of various police reports and was mentioned in police interviews of Shears on April 26, 1996, and August 24, 2012, and in police interviews of Vasquez. In his in limine motion, Shears argued that evidence he used Hallak's gun in the Foodland robbery was irrelevant and its introduction would "create substantial danger of undue prejudice and confusion of the issues." The People opposed the motion, arguing that the date on which Shears possessed the gun was relevant to the issue [of] whether he was the one who committed the April 17, 1996, crimes; Vasquez's identification of the gun as one Shears possessed on April 19 was more relevant than evidence the gun was found in the April 23 search of Shears's apartment, as April 19 was closer in time to April 17; the evidence was relevant to bolster Vasquez's credibility; and if Shears chose to testify, the evidence might be relevant to impeach him in that he had

initially denied involvement in the Foodland robbery and he had proffered several versions of how he came to possess the gun. The prosecutor intended to present the evidence at issue through (1) Vasquez's statement that when he saw Shears with the gun on April 19, Shears said he had used it to rob a woman that day and (2) Shears's statement in the April 23 interview that he had committed the Foodland robbery.

After a lengthy discussion, the court admitted evidence that two days after the Moonlite Market crimes, Shears had committed another crime with a gun. The court deemed too prejudicial for admission any evidence that the other crime was an armed robbery.

Discussion

Shears contends the court abused its discretion under Evidence Code section 352 by admitting into evidence his admission that he used a gun taken during the murder and attempted murders when he committed an unrelated crime two days later. Shears further contends that this abuse of discretion violated his right to due process.

Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "We review for abuse of discretion a trial court's ruling to exclude proffered relevant evidence under Evidence Code section 352." (People v. Fuiava (2012) 53 Cal.4th 622, 663.) An abuse of discretion occurs only when the court's "'ruling falls outside the bounds of reason'" or when "'the court . . . exercise[s] its discretion in an arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice.'" (Ibid, citations omitted.)

Here, there was no abuse of discretion. The court reasonably found that Shears's use of the gun in the April 19, 1996, crime was "highly probative" of his guilt in the April 17 crimes and the prejudice did not "substantially outweigh [the] probative value." Shears's possession of the gun just two days after the Moonlite Market crimes tended to show that he took the gun during those crimes, and the fact that he did not merely possess the gun on April 19, but also used it in a crime that day, added to the probative value. The court also properly found that the evidence was relevant to Vasquez's credibility. Vasquez testified that Shears made statements incriminating himself in the April 17 and April 19 crimes, and confirmation from an independent source that Shears had indeed committed the April 19 crime bore on the credibility of Vasquez's testimony as to Shears's commission of the April 17 crimes. The court's sanitization of the evidence, by omitting the violent details of the April 19 crime, removed any prejudice.

Clearly, Shears's due process rights were not implicated. In People v.

> Fuiava, supra, 53 Cal.4th 622, the California Supreme Court observed: "[A]s the United States Supreme Court recently stated, '[o]nly when evidence "is so extremely unfair that is admission violates fundamental conceptions of justice," [citation], [has the court] imposed a constraint tied to the Due Process Clause.' (Perry v. New Hampshire (2012) 565 U.S. __, __ [181 L.Ed.2d 694, 706, 132 S.Ct. 716] [citing, as an example, the constitutional prohibition against a prosecutor's' "knowin[g] use [of] false evidence,'"]; see also id. at pp._-_ [181 L.Ed.2d at 706-708] [discussing cases in which due process was violated by the admission of witness identification evidence that was developed through improperly suggestive police procedures that created a '"substantial likelihood of misidentification"']; Jammal v. Van de Kamp (9th Cir. 1991) 926 F.2d 918, 920 ['Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial."'].)" (People v. Fuiava, supra, 53 Cal.4th at pp. 696-697.)

(Lodgment No. 6 at 21-24.)

To the extent Petitioner contends the state court's evidentiary ruling violates California state law, he fails to state a cognizable claim on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (finding issues regarding state law are not cognizable on federal habeas corpus review and it is not the province of the federal habeas court to re-examine state-court determinations on state-law questions).

To the extent Petitioner argues that the state court's evidentiary ruling violates the federal Due Process Clause, his claim fails. "Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (citation omitted). As the Ninth Circuit noted:

> [t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that writ should be issued when constitutional errors have rendered the trial fundamentally unfair . . . , it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such 'clearly established Federal law,' we cannot conclude that [a] state court's ruling [on the admission of evidence] was an 'unreasonable application.'"

Id. (citations omitted).

Because there is no clearly established Federal law dictating that the admission of sanitized and relevant, albeit prejudicial, evidence is forbidden, Petitioner's claim must be denied. See, e.g., Spencer v. California, 2013 WL 1092997, at *1-2 (9th Cir. 2012) (federal habeas claim that state trial court erred by admitting evidence fails because there is no Supreme Court authority which has clearly established that admission of evidence can violate due process) (citing Holley, 568 F.3d at 1101 and Alberni v. McDaniel, 458 F.3d 860, 865-67 (9th Cir. 2006)). Moreover, in this case, the appellate court found that the trial court did not err as it correctly determined that the disputed evidence was relevant to the charged crimes and that the sanitization of the evidence removed any prejudice. Lodgment No. 6 at 21-14. As a result, the court concluded that there was no constitutional due process violation. Id. at 24. Under the deferential review of AEDPA, even if there could be a due process violation, the Court would find that the state court's ruling was not contrary to, nor an unreasonable application of, clearly established federal law.

The Court therefore **RECOMMENDS** Claim Two be **DENIED.**

### C.     Petitioner's Request for Evidentiary Hearing

Spears asks this Court to conduct an evidentiary hearing on his claims. See Traverse at 3. A federal court's discretion to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously made unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"Federal courts sitting in habeas are not an alternative forum for trying facts and issues

which a prisoner made insufficient effort to pursue in state proceedings." <u>Williams v. Taylor</u>, 529 U.S. 420, 437 (2000). Here, Petitioner makes a perfunctory request "that an evidentiary hearing be granted on Grounds 1 and 2." Traverse at 3. However, Petitioner does not establish that his request relies on a new rule of constitutional law, or a factual predicate that could not have been previously discovered through the exercise of due diligence. <u>See</u> <u>id.</u> Similarly, Petitioner has not alleged facts that would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. <u>See</u> <u>id.</u> Accordingly, the Court **DENIES** Petitioner's request for an evidentiary hearing.

## VI. CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that no later than **February 23, 2018**, any party to this action may file written objections with this Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 16, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: 1/26/2018

Hon. Barbara L. Major
United States Magistrate Judge